1  GERALD N. SIMS (Cal. Bar No. 99133)
   SUSAN C. STEVENSON (Cal. Bar No. 127291)
2  PYLE SIMS DUNCAN & STEVENSON
   A Professional Corporation
3  401 B Street, Suite 1500
   San Diego, CA 92101
4  Telephone: (619) 687-5200
   Facsimile: (619) 687-5210
5

6  Attorneys for James L. Kennedy,
   Chapter 11 Trustee
7

8

9              UNITED STATES BANKRUPTCY COURT

10             SOUTHERN DISTRICT OF CALIFORNIA

11  In re                          )    Case No. 10-02939-PB11
                                   )
12  NICOLAS MARSCH, III,           )    CHAPTER 11 TRUSTEE'S MOTION TO
                                   )    APPROVE SETTLEMENT AND
13              Debtor.            )    COMPROMISE WITH LENNAR
                                   )    CORPORATION AND LENNAR HOMES
14                                 )    OF CALIFORNIA, INC.; MEMORANDUM
                                   )    AND POINTS AND AUTHORITIES IN
15                                 )    SUPPORT THEREOF
                                   )
16                                 )    Date:   July 28, 2011
                                   )    Time:  9:30 a.m.
17                                 )    Dept:   4
    _____)    Honorable Peter W. Bowie
18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

Page

3    I.      FACTUAL BACKGROUND .................................................. 1

4    II.     JURISDICTION AND VENUE .............................................. 3

5    III.    THE LITIGATION ....................................................... 3

6            A.      The Bridges Action ......................................... 3
             B.      The Lakes/McCrink Action ................................... 5
7            C.      The HCC Action ............................................. 6
             D.      Florida Action ............................................. 6
8            E.      Florida Action Stay Adversary Proceeding ................... 7
             F.      HCC Adversary Proceeding ................................... 8
9            G.      Minkow's Plea Agreement .................................... 8

10   IV.     UPON APPROVAL BY THE COURT, A TRUSTEE MAY
             COMPROMISE A CLAIM OF THE ESTATE ................................... 9
11
     V.      THE TRUSTEE SHOULD BE PERMITTED TO ENTER
12           INTO A COMPROMISE IF IT IS REASONABLE UNDER THE
             PARTICULAR CIRCUMSTANCES OF THE CASE ............................. 9
13
             A.      Probability of Success in the Litigation ................... 10
14           B.      The Difficulties, If Any, to Be Encountered in the Matter of Collection ........ 11
             C.      The Complexity of the Litigation Involved, and the Expense, Inconvenience and
15                   Delay Necessarily Attending to It ......................... 11
             D.      The Paramount Interest of the Creditors and a Proper Deference to Their
16                   Reasonable Views .......................................... 11

17   VI.     CONCLUSION ......................................................... 12

18

19

20

21

22

23

24

25

26

27

28

i

1

# TABLE OF AUTHORITIES

2

3

<u>**Page(s)**</u>

4

## <u>CASES</u>

5

Burton v. Ulrich (In re Schmitt),
   215 B.R. 417 (B.A.P. 9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

6

Marin v. Caine (In re A&C Properties),
   784 F.2d 1377 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

7

8

Woodson v. Fireman's Fund Ins. Co. (In re Woodson),
   839 F.2d 610 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

9

10

## <u>FEDERAL STATUTES AND RULES</u>

11

28 U.S.C. § 157 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

12

28 U.S.C. § 1334 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

13

Federal Rule of Bankruptcy Procedure 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

14

Federal Rule of Bankruptcy Procedure 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

15

Federal Rule of Bankruptcy Procedure 6004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

16

Federal Rule of Bankruptcy Procedure 9019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9

17

18

19

20

21

22

23

24

25

26

27

28

1   James L. Kennedy, the Chapter 11 Trustee for Nicholas Marsch, III ("Debtor" or "Marsch"),

2   files this Motion to Approve Settlement and Compromise with Lennar Corporation and Lennar

3   Homes of California, Inc., and respectfully represents:

4   **I.**

5   **FACTUAL BACKGROUND**

6   This case was commenced with the filing of a voluntary petition under Chapter 11 of Title 11

7   of the United States Code on February 25, 2010 (the "Estate"). On August 4, 2010, James L. Kennedy

8   was appointed Trustee of the Chapter 11 bankruptcy estate ("Trustee"). [Docket No. 221.]

9   It has been represented to the Trustee that the Debtor's game plan in this bankruptcy estate

10  was to pursue litigation claims against Lennar Corporation and Lennar Homes of California, Inc.

11  (collectively, "Lennar") related primarily to real property developments in Rancho Santa Fe,

12  California. The litigation, which is described below, included the Bridges Action which ended in a

13  judgment in favor of Lennar and against Marsch. Lennar has been tenacious in its pursuit of claims

14  against March and the Marsch Estate and asserts claims aggregating in excess of $500,000,000 in

15  this case. Lennar holds a liquidated claim against Marsch in excess of $50,000,000 based upon the

16  judgment in the Bridges Action. Lennar has obtained judgments against Marsch, which deny

17  Marsch's discharge and determine that certain debts owed by Marsch to Lennar are non-

18  dischargeable. [Adv. No. 10-90253 Docket No. 16 and Adv. No. 10-90550 Docket No. 10.]

19  The Claims Register in this case reflects total filed claims in the aggregate amount of

20  $272,150,973. Lennar's claims were filed as unliquidated, in unknown amounts and are not

21  included in that total. The claims filed by KBR and related entities and individuals total

22  $224,882,149. The largest of the KBR claims is that of KRMW, which filed a claim for the value

23  of the litigation against Lennar that it apparently valued at $205,782,950 when it filed the proof of

24  claim. The Claims Register reflects just under $24,000,000 in secured claims. While a complete

25  claims analysis has not been completed, it is the Trustee's belief that unsecured claims, other than

26  those asserted by Lennar and KBR, will be in the range of $10,000,000.

27  The Marsch Estate has limited assets. Although as the ultimate equity owner of Briarwood

28  Capital, LLC, the Marsch Estate could have benefitted from a successful outcome in the litigation

1

1    against Lennar, the Marsch Estate holds no direct claims against Lennar.  There have been

2    allegations that there may be fraudulent transfer or like claims that could be pursued but, to date,

3    the only identified assets with value to the Marsch Estate are the claims against Mountain Resort

4    Properties, LLC ("MRP"), Barry Minkow and Jeffrey Sachs.

5            In April 2009, Debtor transferred to Jeffrey Sachs ("Sachs") and www.DegreeFraud.Com

6    LLC ("DegreeFraud"), 100% of the equity interest in Mountain Resort Properties, LLC ("MRP"),

7    which filed its own Chapter 11 bankruptcy case on April 15, 2010, in United States Bankruptcy

8    Court for the District of Colorado as case no. 10-17709-SBB (the "MRP Case").  The Trustee

9    analyzed that transfer and entered into a settlement, which resulted in a payment to the Marsch

10   Estate of $425,000, consisting of $375,000 for claims asserted by the Marsch Estate and $50,000

11   for claims asserted by Colony Properties LLC.

12           The settlement proceeds represent the entirety of cash held by the Trustee.  The only other

13   asset that may have value is the Marsch Estate's claim in the Briarwood Capital, LLC case, and the

14   Trustee's accountant will be reviewing financial records to obtain backup, if available, to support

15   that claim.  The Trustee does not anticipate funds being available from any other sources.

16           The settlement between Lennar and the Marsch Estate proposed is essentially as follows:

17       1.    The Marsch Estate will release any and all claims, if any, it may have against

18             Lennar;

19       2.    Lennar will waive and release its claims against the Marsch Estate (but not against

20             Marsch individually or against Mrs. Marsch individually); and

21       3.    Lennar will withdraw its opposition to conversion of this case to a Chapter 7

22             liquidation case.

23   A copy of proposed Settlement Agreement is attached hereto as Exhibit "A."

24           The Trustee believes that this settlement is in the best interests of the Marsch Estate and

25   other creditors because it will eliminate the need for further expenditures by the Marsch Estate to

26   deal with Lennar issues and it will allow the limited cash resources to be distributed to creditors

27   other than Lennar and without the dilution that would result from Lennar's participation in a

28   distribution.

## II.

## JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicate for the relief sought is Federal Rules of Bankruptcy Procedure 2002, 2014, 6004 and 9019(a).

## III.

## THE LITIGATION[1]

Prior to bankruptcy, Briarwood's primary business was land acquisition and organizing financing for real estate development.  The primary developments of Briarwood related to two projects: "The Bridges at Rancho Santa Fe" and "The Lakes in Rancho Santa Fe."  Extensive litigation between Briarwood, its principal, Marsch, and Lennar arose prepetition concerning both projects.  The two largest litigation matters are currently pending in the Superior Court for the County of San Diego, Case No. GIC877446 (the "Bridges Action") and Case No. GIC875457 (the "Lakes/McCrink Action").  Those litigation matters and other interests that are the subject of the Settlement Agreement are described briefly below:

**A.    The Bridges Action.**

Briarwood filed the Bridges Action against Lennar in San Diego Superior Court in December 2006, alleging, among other things, that Lennar improperly accounted for and mismanaged The Bridges development.  Briarwood filed the action on its own behalf and derivatively on behalf of HCC Investors, LLC.  (Declaration of Leslie Gladstone in Support of Chapter 11 Trustee's Motion for Order: (A) Approving Sale of Estate Assets and Compromise of Controversy Pursuant to 11 U.S.C. § 363 and Federal Rules of Bankruptcy Procedure 6004 and

---

[1]    Rather than recreate the wheel, the Trustee has adopted the description of the litigation contained in the Briarwood Trustee's Motion for Order: (A) Approving Sale of Estate Assets and Compromise of Controversy Pursuant to 11 U.S.C. § 363 and Federal Rules of Bankruptcy Procedure 6004 and 9019(a); and (B) Nunc Pro Tunc Retention of Gordon & Holmes as Special Litigation Counsel Pursuant to 11 U.S.C. § 327 and Federal Rules of Bankruptcy Procedure 2002 and 2014; Memorandum of Points and Authorities [Bankruptcy Case No. 10-2677 Docket No. 364, pgs. 4-10] and requests that the Court take judicial notice of the Declaration of Leslie Gladstone in support thereof and the Exhibits attached thereto [Bankruptcy Case No. 10-2677 Docket No. 365].

3

9019(a); and (B) Nunc Pro Tunc Retention of Gordon & Holmes as Special Litigation Counsel Pursuant to 11 U.S.C. § 327 and Federal Rules of Bankruptcy Procedure 2002 and 2014 [Bankruptcy Case No. 10-2677 Docket No. 365] ("Gladstone Decl."), Ex. E (Operative Complaint in Briarwood Capital, LLC v. HCC Investors LLC, et al., Case No. GIC-877446.)

Lennar filed a cross-complaint against Marsch and his entities, Briarwood, and non-debtor, Colony Properties LLC, for breaching their agreements with Lennar and diverting assets from HCC. Among other claims, Lennar sought the principal and interest on two $2 million loans that HCC had made to Marsch's entities in 1999 and 2003. It also requested the rescission of two tolling agreements and an agreement that purported to admit Marsch as a member of Lennar Bridges, on the grounds that they were procured by fraud. (Gladstone Decl., Ex. F (Operative Cross-Complaint in Briarwood Capital, LLC v. HCC Investors LLC, et al., Case No. GIC-877446).)

Two months before trial, on April 30, 2009, Lennar filed a motion seeking a bifurcation of the trial into legal and equitable causes of action pursuant to section 598 of the California Code of Civil Procedure. The Court ruled that the trial would be conducted in four phases, with the equitable causes of action tried first and reserving for future phases any causes of action not foreclosed by the findings in that initial phase.

The Bridges trial commenced on June 23, 2009, and lasted for eleven months. Twenty-one percipient witnesses and seven experts presented testimony and were examined. Marsch's examination spanned twenty-three days. On July 16, 2010, Superior Court Judge William R. Nevitt, Jr. issued his tentative decision, which was revised into a final Statement of Decision dated September 30, 2010. (Gladstone Decl., Ex. G (Statement of Decision).) The 52-page decision includes 303 findings of fact. Judge Nevitt ruled against Briarwood on its claims against Lennar, rejecting Briarwood's contentions that Lennar's accounting was incorrect or that Lennar mismanaged the project. The trial court also held that (a) Briarwood lacked standing to bring certain claims; (b) the statutes of limitation had expired on others; and (c) Briarwood and Marsch had waived and were estopped from bringing other claims. (Gladstone Decl., Ex. G at 41–47.)

In addition, Judge Nevitt made findings that Marsch was "not credible," had been "thoroughly impeached with his own testimony, documents and the testimony of other witnesses,"

and "repeatedly gave false testimony on material issues." (Gladstone Decl., Ex. G at 12, 15–17, 20–23, 26–30, 34, 36, 38.) Judge Nevitt also found in Lennar's favor on various cross-claims and ruled that the Debtors were jointly and severally liable to Lennar for more than $17.5 million, including nearly $7 million for principal and interest on two loans the Debtors never repaid, over $7 million for "tax distributions" the Debtors received from HCC but did "not use[] to pay taxes," and over $3 million for a judgment plus interest that HCC paid on the Debtors' behalf. (Gladstone Decl., Ex. G at 47-48.) On January 14, 2011, the Superior Court entered judgment in favor of Lennar. On February 15, 2011, Lennar filed a motion seeking to recover $36.4 million in attorneys' fees pursuant to contract. On February 28, 2011, Briarwood initiated an appeal. On March 30, 2011, Lennar was awarded approximately $36.4 million in attorneys' fees, leaving Lennar with a liquidated claim of approximately $54 million.

**B.    The Lakes/McCrink Action.**

In 2006, Briarwood sued Lennar claiming that an oral partnership agreement had existed between Lennar and Briarwood to acquire and develop a 542-acre master-planned community near the Bridges known as McCrink Ranch. The case was dismissed on the eve of trial when Marsch testified that the alleged oral agreement was not to form a new joint venture, but to use the existing HCC venture to acquire and develop McCrink Ranch under the name The Lakes at Rancho Santa Fe. Based on Marsch's testimony, Lennar moved for judgment on the pleadings. The trial court granted the motion. Late last year, the Court of Appeal reversed the dismissal, concluding that Marsch's testimony could not be adjudicated by way of a motion for judgment on the pleadings. (Gladstone Decl., Ex. H.)

If the Lakes/McCrink Action does not settle, the Briarwood Trustee understands that Lennar anticipates filing other dispositive motions and that Lennar believes strongly that it will ultimately prevail on those motions. Moreover, if the case is tried, in light of Marsch's testimony tying the alleged oral agreement to HCC, any claim would arguably have to be brought derivatively on behalf of HCC, not individually on behalf of Briarwood. Thus, if the Court's decision in the Bridges Action stands, that would mean that any recovery in the Lakes/McCrink Action would arguably belong to HCC, not Briarwood. Because Judge Nevitt found in the Bridges Action that

5

1    the operative agreements require distribution of proceeds first to Lennar for its invested capital and

2    preferred return, an amount that currently approximates $300 million, it is quite possible that

3    Briarwood would never recover even if it prevailed.  (Gladstone Decl., Ex. G at Fact No. 44 at 17.)

4    **C.    The HCC Action.**

5        Briarwood filed this action in an effort to obtain fees that it asserted were owed to it by HCC

6    pursuant to the HCC Operating Agreement for periods beginning on January 1, 2009.  (Gladstone

7    Decl., Ex. I (Complaint in <u>Briarwood Capital, LLC v. HCC Investors LLC</u>, Case No. 37-2009-

8    00097749-CU-BCCTL).)  The parties stipulated to stay the HCC Action pending the outcome of the

9    Bridges Action because it involved Briarwood's claim to the same fees for the period before January

10    1, 2009.

11        At the conclusion of the Bridges Action, the trial court ruled that Briarwood was not entitled

12    to override, developer or transfer fees and adjudicated Briarwood's entitlement to fees going

13    forward.  (Gladstone Decl., Ex. G at 33 ("Commencing no later than June 2008, HCC has no

14    obligation to pay Section 6.05(a) developer fees to Briarwood or Mr. Marsch because Mr. Marsch

15    has taken actions, including the deception addressed herein, that render him unable to provide such

16    services ... HCC's decision, commencing in June 2008, to stop paying fees to Briarwood, Mr.

17    Marsch and Lennar was a reasonable business judgment and fair to HCC.").)  The Bridges court's

18    findings and conclusions may have preclusive *res judicata* effect.

19    **D.    Florida Action.**

20        In July 2008, Marsch wrote a letter to each of Lennar's outside directors accusing Lennar of

21    stealing $37.5 million from him and threatening to expose Lennar's "dirty little secrets" to the SEC

22    unless it paid millions of dollars.  Lennar refused to pay and instead filed suit against Marsch and

23    Briarwood in Florida state court for their actions.  (Gladstone Decl., Ex. J (Lennar's Fourth

24    Amended Complaint).)

25        On January 9, 2009, Barry Minkow (who was hired by Marsch) started an internet campaign

26    against Lennar.  Minkow accused Lennar of committing securities fraud, failing to disclose "related

27    party transactions," operating a "Madoff-like ponzi scheme," teetering on the brink of bankruptcy,

28    cheating home buyers, looting joint ventures, and giving its second-highest ranked executive a $5

1  million "disguised kickback." (Gladstone Decl., Ex. J.)  Investors traded a record 58 million shares

2  of Lennar Corporation on January 9, 2009, and Lennar's stock dropped 20% and more than $364

3  million in market capitalization was lost.  Lennar immediately amended its complaint in Florida to

4  add Minkow and his company the Fraud Discovery Institute ("FDI").  In February 2010, the court

5  set an August trial date in the Florida Action.  Shortly thereafter, the Debtor and Briarwood filed for

6  bankruptcy protection and obtained an order extending the automatic stay to Minkow and FDI,

7  except for a then-pending motion for terminating sanctions that Lennar had filed against them.

8      On December 27, 2010, the Court entered an order (a) defaulting Minkow; (b) requiring an

9  adverse instruction against FDI be read to the jury at the upcoming trial against the other defendants;

10  and (c) ordering Minkow and FDI to reimburse Lennar for all attorneys' fees and costs incurred in

11  uncovering and proving the pervasive misconduct.  "After considerable reflection," the court held,

12  "Minkow's misconduct was so egregious and pervasive, including efforts at cover up his

13  misconduct, there is no remedy short of default that could restore Lennar and protect the integrity of

14  the judicial process. . . . Minkow's corruption of the litigation process represents a substantial threat

15  to orderly administration of justice.  When confronted by such a threat, there is no choice but to take

16  decisive action to fully protect the institution of justice, its processes and its litigants from future

17  abuse. . . ."  (Gladstone Decl., Ex. K.)

18      Lennar has informed the Trustee that absent a settlement, Lennar will prosecute the case

19  against the Debtors to judgment after it obtains relief from the automatic stay.  Lennar claims that

20  the damage to its reputation and operations will result in an award against both the Briarwood and

21  Marsch estates in excess of $500 million.

22  **E.      Florida Action Stay Adversary Proceeding.**

23      On February 28, 2010, Briarwood filed in the Bankruptcy Court an adversary proceeding

24  entitled Briarwood Capital, LLC v. Lennar Corporation and Lennar Homes of California, Inc. (Adv.

25  Pro. No. 10-90118-PB) (the "Florida Action Stay Adversary Proceeding").  This matter is presently

26  pending before the Bankruptcy Court.

27  / / /

28

1    **F.        HCC Adversary Proceeding.**

2            On April 5, 2010, Briarwood filed an adversary proceeding in the Bankruptcy Court entitled

3    Briarwood Capital, LLC v. HCC Investors LLC (Adv. Pro. No. 10-90184-PB) (the "HCC Adversary

4    Proceeding").  This matter is presently pending before the Bankruptcy Court.

5    **G.        Minkow's Plea Agreement**.

6            On March 22, 2011, Minkow pled guilty to one count of conspiracy to commit securities

7    fraud with respect to his conduct relating to the Florida Action.  (Gladstone Decl., Ex. L.)  The plea

8    agreement states that Minkow conspired with Conspirator A "and others ... to execute a scheme and

9    artifice to defraud Lennar Corporation and others in connection with securities issued by Lennar

10   Corporation and to obtain, by means of false or fraudulent pretenses, representations, or promises,

11   money or property from Lennar Corporation in connection with the purchase or sale of securities

12   issued by Lennar Corporation. . . When Conspirator A was unsuccessful at obtaining a judgment in a

13   court of law, Conspirator A decided to employ extortionate means to induce Lennar Corporation to

14   pay the demanded sum of money."  (Gladstone Decl., Ex. L at 9.)  "Conspirator A" in the plea

15   agreement has been identified by Minkow's lawyer as Nicolas Marsch, III.

16   **H.        The Briarwood Bankruptcy Estate's Interests in HCC and Lennar Bridges.**

17           HCC Investors, LLC was formed in August 1997 to develop and manage The Bridges, a real

18   estate project located in North San Diego County.  Lennar holds a 50% membership interest in HCC

19   and the Briarwood bankruptcy estate contends that it owns the other 50% membership interest in

20   HCC.

21           Lennar Bridges, LLC was formed in November 1998 to acquire and develop a parcel of real

22   property known as Santa Fe Creek located adjacent to the property that became The Bridges.

23   Briarwood and Marsch claimed during the Bridges Action that Briarwood either was or should be

24   equitably deemed a member of Lennar Bridges.  That argument was rejected by Judge Nevitt.

25   / / /

26   / / /

27   / / /

28

## IV.

## UPON APPROVAL BY THE COURT, A TRUSTEE MAY

## COMPROMISE A CLAIM OF THE ESTATE

Federal Rule of Bankruptcy Procedure 9019(a) provides:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the debtor and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Accordingly, upon appropriate notice, the Court may approve a compromise or settlement. This entire motion is being served on Debtor, Debtor's counsel, all parties requesting special notice and the Office of the United States Trustee, and notice of the motion has been served on all creditors and on all settling parties.

## V.

## THE TRUSTEE SHOULD BE PERMITTED TO ENTER

## INTO A COMPROMISE IF IT IS REASONABLE UNDER THE

## PARTICULAR CIRCUMSTANCES OF THE CASE

The Ninth Circuit has stated that "[t]he purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." Marin v. Caine (In re A&C Properties), 784 F.2d 1377, 1380-81 (9th Cir. 1986) cert. denied sub nom, Martin v. Robinson, 479 U.S. 854 (1986). The Bankruptcy Court has great latitude in approving a compromise so long as it finds the compromise is fair and equitable. Id. at 1382; see also Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988) and Burton v. Ulrich (In re Schmitt), 215 B.R. 417, 421 (B.A.P. 9th Cir. 1997).

Both the Ninth Circuit Court of Appeals and the Ninth Circuit Bankruptcy Appellate Panel have consistently held that a bankruptcy court must consider four factors in determining whether to approve a compromise:

> (a)    The probability of success in the litigation;

> (b)    The difficulties, if any, to be encountered in the matter of collection;

9

1          (c)      The complexity of the litigation involved, and the expense, inconvenience and

2                delay necessarily attending to it; and

3          (d)      The paramount interest of the creditors and a proper deference to their

4                reasonable views.

5 In re A&C Properties, 784 F.2d at 1391; In re Woodson, 839 F.2d at 620; In re Schmitt, 215 B.R. at

6 421.

7 **A.      Probability of Success in the Litigation.**

8        It appears from the pleadings in the Bridges and McCrink Actions that the claims asserted

9 are owned not by the Marsch Estate but by the Briarwood Estate.  Thus, at the outset there is a high

10 probability that the Marsch Estate will be unsuccessful in pursuing any claims against Lennar.  But

11 the problems do not end there.  As stated above, the Superior Court has already ruled in Lennar's

12 favor in the Bridges Action.  Thus, success necessitates first obtaining a reversal.  A reversal and

13 new trial do not assure success in a retrial.  The Marsch Estate does not have the financial capability

14 of funding the appeal and retrial and even if it did, success appears far from certain.  Complicating

15 this analysis is the fact of the Briarwood Trustee's independent settlement with Lennar, which, if

16 approved, would result in a release of all claims the Briarwood Estate holds against Lennar.

17        As to the McCrink Action, the Superior Court's judgment, issued pursuant to a motion for

18 judgment on the pleadings, was reversed by the Court of Appeal and has been sent back to the

19 Superior Court for trial.  Once again, it appears that the claims asserted in the McCrink Action are

20 the property of the Briarwood Estate not the Marsch Estate.  Thus, pursuit of that action would be

21 met with a well grounded challenge to the Marsch Estate's standing.  Even if the Marsch Estate were

22 to survive the standing challenge, success would depend on the credibility of Marsch who to date in

23 these matters has not been perceived as a credible witness by the various triers of fact.

24        To sum up, the Trustee is of the opinion that pursuit of claims against Lennar is likely to be

25 unsuccessful because the claims appear to belong to the Briarwood Estate not the Marsch Estate, the

26 Bridges Action has already been tried unsuccessfully in the Superior Court, and the McCrink Action

27 depends upon a retrial in which a new trier of fact has a different view of Marsch's credibility than

28 previous courts.  It is fair to say that success in these matters is unlikely.

1    **B.**    **The Difficulties, If Any, to Be Encountered in the Matter of Collection.**

2        The Trustee has not done an exhaustive review of Lennar's financials.  However, it is

3    assumed that should the Marsch Estate actually hold claims against Lennar and those claims were

4    successfully pursued to judgment, then collection could occur through either payment or attachment

5    of cash and/or property, including the underlying real properties at issue.  In this instance, difficulty

6    of collection is not a factor in the Trustee's decision.

7    **C.**    **The Complexity of the Litigation Involved, and the Expense, Inconvenience and Delay**

8        **Necessarily Attending to It.**

9        The Bridges and McCrink Actions are very complex.  They involve complex relationships

10   some portions of which are documented and some are not.  Even as to the documented portions there

11   is substantial dispute between Lennar and Marsch as to the meaning of the documents.  McCrink has

12   already been to the Court of Appeal, the Bridges Action in the Superior Court over eleven months.

13   The cost of litigating these claims is in the tens of millions of dollars.  The Marsch Estate simply

14   does not have the funds even to cover the costs that would be incurred in trials of this magnitude.

15   The Bridges Action took eleven months to try the first time.  To get to a second trial, the Marsch

16   Estate would first have to prevail in the appeal which is likely to take twelve months or more, after

17   which another trial of several months would be required.

18       The Trustee previously determined that these claims, if they exist at all, are burdensome to

19   the Marsch Estate.  On May 5, 2011, the Trustee filed and served his notice of intent to abandon the

20   claims on that basis.  [Docket No. 359.]  It is fair to say that even if the Briarwood Estate were

21   pursuing the appeal of the Bridges Action and the trial of the McCrink Action, the simple fact of

22   keeping the estate open for the period of time required would consume much of the money that

23   otherwise would be available to creditors.

24   **D.**    **The Paramount Interest of the Creditors and a Proper Deference to Their Reasonable**

25       **Views.**

26       The proposed settlement is being noticed to all creditors who will have the opportunity to

27   object or otherwise express their views.  The Trustee submits that the interests of creditors are well

28   served by the settlement.  Eliminating Lennar from the pool of claimants to be paid will greatly

1  enhance the payments to remaining creditors.  Because the cost of administration will be reduced

2  significantly by eliminating the issues to be resolved with Lennar and because removing even the

3  liquidated portion of Lennar's claims from the distribution will greatly enhance the portion of the

4  ultimate distribution to other creditors.

5        In this instance, litigation is simply not an option given the lack of funds, questionable

6  standing and problems of proof.  Absent the settlement, the Trustee will abandon the claims and

7  Lennar will be free to assert its claims against the Marsch Estate.

8  **VI.**

9  **<u>CONCLUSION</u>**

10        The Trustee respectfully requests this Court to approve the settlement agreement attached

11  hereto as Exhibit "A," and for such other and further relief as is just.  The Trustee further requests

12  that the fourteen-day stay period pursuant to Federal Rules of Bankruptcy Procedure 6004(h) not

13  apply to the order approving this motion.

14  Dated: June 30, 2011              PYLE SIMS DUNCAN & STEVENSON
                                 A Professional Corporation

15

16

17                                 By:__/s/ Gerald N. Sims_____
                                   Gerald N. Sims, Attorneys for

18                                     James L. Kennedy, Chapter 11 Trustee

19

20

21

22

23

24

25

26

27

28

## SETTLEMENT AND RELEASE AGREEMENT

This SETTLEMENT AND RELEASE AGREEMENT (this "Agreement") is entered into this 29th day of June 2011 (the "Agreement Date"), by and between JAMES L. KENNEDY, as the duly appointed Chapter 11 Trustee for the bankruptcy estate of Nicolas Marsch III, an individual (the "Marsch Trustee"), on the one hand, and LENNAR CORPORATION, a Delaware corporation ("Lennar Corp.") and LENNAR HOMES OF CALIFORNIA, INC. a California corporation ("Lennar Homes" and, collectively with Lennar Corp. and their present and former affiliates, including Lennar San Jose Holdings, Inc., Lennar Land Partners II, LL Partners, Inc., LLPII HCC Holdings, LLC, HCC Investors, LLC and Lennar Bridges, LLC, "Lennar" and collectively, with the Marsch Trustee the "Parties", and each, a "Party"), on the other hand, with reference to the following:

### RECITALS

A.      WHEREAS, on February 25, 2010, Nicolas Marsch III ("Marsch") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of California (the "Bankruptcy Court"), which was assigned Case No. 10-02939-PB11 (the "Marsch Bankruptcy Case").   On July 19, 2010, the Bankruptcy Court ordered the appointment of a chapter 11 trustee in the Marsch Bankruptcy Case and on August 4, 2010, the Bankruptcy Court approved the appointment of the Marsch Trustee as the chapter 11 trustee in the Marsch Bankruptcy Case with responsibility for the bankruptcy estate in that case (the "Marsch Estate").

B.      WHEREAS, on February 23, 2009, Briarwood Capital, LLC ("Briarwood") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, which was assigned Case No. 10-02677-PB11 (the "Briarwood Bankruptcy Case").   On July 19, 2010, the Bankruptcy Court ordered the appointment of a chapter 11 trustee in the Briarwood Bankruptcy Case and on August 6, 2010, the Bankruptcy Court approved the appointment of

EXHIBIT "A"

Leslie Gladstone as the chapter 11 trustee in the Briarwood Bankruptcy Case with responsibility for the bankruptcy estate in that case.

C.    WHEREAS, on December 13, 2010 Lennar filed proofs of claim in the Marsch Bankruptcy Case asserting claims related, *inter alia*, to claims asserted by Lennar in certain litigation filed by Lennar against Marsch, Briarwood and others.  Lennar asserts that its claims against Marsch have been liquidated by judgments of the Superior Court for San Diego County in one of these litigations in an amount totaling approximately $54 million and that Lennar is likely to prevail in the remaining unliquidated claims in an amount exceeding $500 million. Such proofs of claim were filed by Lennar Corp., Lennar Homes, Lennar Land Partners II, Lennar San Jose Holdings, Inc., LLPII HCC Holdings, LLC, Lennar Bridges, and HCC (collectively, the "Lennar Claims").

D.    WHEREAS, on October 27, 2010, the Marsch Trustee filed a Motion to Convert the Marsch Bankruptcy to a case under chapter 7 under the Bankruptcy Code [Docket No. 279] (the "Conversion Motion"). The Conversion Motion was opposed by Lennar and the Bankruptcy Court has not yet entered an order on the Conversion Motion.

E.    WHEREAS, on April 29, 2011, the Briarwood Trustee, Lennar and certain other parties entered into a settlement agreement with respect to, *inter alia*, claims asserted against Lennar in litigation filed by Briarwood against Lennar [Docket No. 365-1 in the Briarwood Bankruptcy Case] (the "Briarwood Settlement Agreement").

F.    WHEREAS, on May 3, 2011, the Briarwood Trustee filed a Motion to Approve the Briarwood Settlement Agreement [Docket No. 364 in the Briarwood Bankruptcy Case] (the "Briarwood Settlement Motion").  The Briarwood Settlement Motion is set for hearing before the Bankruptcy Court on June 30, 2011.

G.    WHEREAS, on May 5, 2011, the Marsch Trustee filed a Notice of Intended Action [Docket No. 359] (the "Abandonment Notice") in which the Marsch Trustee proposed to abandon "all of the estate's interests, if any, in the claims and any cross-claims asserted in the San Diego Superior Court Action entitled *Briarwood Capital, LLC v. Lennar Land Partners II,*

*et al.*, Case No. GIC 875457 (the "McCrink Action"); the claims asserted in the San Diego Superior Court Action entitled *Briarwood Capital, LLC v. HCC Investors LLC, et al.*, Case No. GIC-877446 (the "Bridges Action"); and any appeals related to the McCrink Action and the Bridges Action."

      H.      On June 6, 2011, Lennar filed its opposition to the proposed abandonment of the claims described in the Abandonment Notice.  [Docket No. 373].  In that opposition, Lennar argued that Marsch had never asserted claims against Lennar in the McCrink Action, the Bridges Action or any other litigation; rather, the plaintiff in all those litigations was Briarwood.  Lennar also argued that the claims asserted by Briarwood against Lennar in these litigations had been rejected by the courts trying them and that the Marsch Estate had no legitimate claims against Lennar that it might abandon to Marsch.  Even so, Lennar indicated that it was willing to provide a benefit to the Marsch Estate by agreeing to waive its claims against the Marsch Estate in return for a release of any claims that the Marsch Estate may have against Lennar and an assignment of any such claims to Lennar.

      The Marsch Trustee has concluded that this offer by Lennar is fair and equitable and will provide the Marsch Estate a significantly superior alternative to abandoning such claims to Marsch.  The Marsch Trustee, in the exercise of his business judgment, has determined that the offer made by Lennar is in the best interests of creditors because it will maximize the recovery of other creditors from estate assets.

      I.      The Agreement set forth herein is the product of substantial arms'-length, good-faith negotiations between Lennar and the Marsch Trustee.

### **AGREEMENT**

      NOW, THEREFORE, based on the mutual promises contained in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

      1.      <u>Bankruptcy Court Approval</u>.

a.    <u>Effective Date</u>.  The settlement provided for in this Agreement shall become effective (the "Effective Date") on the first business day, or as soon thereafter as is practicable, after satisfaction of the following conditions: the entry of an order of the Bankruptcy Court approving this Agreement (the "<u>Approval Order</u>"), which Approval Order shall (a) contain provisions including: (i) approval of the settlements contained in this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019, (ii) approval of the release of all claims released by the Marsch Trustee and the Marsch Estate pursuant to this Agreement, and (iii) findings of fact that this Agreement was entered into in good faith and that the transfer of claims to Lennar provided herein are entitled to the protections of Bankruptcy Code § 363(m), and (b) not be stayed, modified, or set aside; provided, that if after entry of the Approval Order and prior to the Effective Date, a motion is filed in respect of the Approval Order for a new trial, to stay, modify, set aside or amend the Approval Order, for relief from the Approval Order, or for other "reconsideration" of the Approval Order under Federal Rules of Civil Procedure 59 or 60, Federal Rules of Bankruptcy Procedure 9023 or 9024 or other applicable law or rules of court, then any Party may elect to delay the occurrence of the Effective Date until such date as the Bankruptcy Court denies such motion or such motion is withdrawn.  All transfers and delivery of documents provided in this Agreement to occur on the Effective Date shall occur simultaneously.  The Approval Order shall be consistent with the terms of this Agreement and in a form reasonably acceptable to all Parties.

b.    <u>Approval Motion</u>.  As soon as reasonably practicable after the Agreement Date, the Marsch Trustee will file a motion to obtain the Approval Order (the "<u>Approval Motion</u>").  In addition to the relief specified above, the Approval Motion shall seek a waiver of any relevant stay periods after entry of an order approving the Approval Motion.  The Parties agree to use their reasonable best efforts to obtain Bankruptcy Court approval of this Agreement and the Approval Motion as soon as reasonably practicable, including by submitting supporting pleadings and declarations as appropriate and to

cooperate and to coordinate with each other regarding the contents of such supporting pleadings and declarations.

c.    <u>Deadline for Approval</u>.  If the Effective Date has not occurred within seventy-five (75) days after the Agreement Date, any Party may elect to terminate its obligations under this Agreement.

d.    <u>Appeal</u>.  Absent the granting of a stay pending appeal with respect to the Approval Order by a court of competent jurisdiction pursuant to Federal Rule of Bankruptcy Procedure 8005, each of the parties shall perform his obligations under this Agreement notwithstanding the filing of an appeal of the Approval Order.

2.    <u>Withdrawal of Abandonment Notice</u>.  Simultaneously with filing the Approval Motion, the Marsch Trustee will ask the Court to defer ruling on the Abandonment Notice. Upon the occurrence of the Effective Date, the Abandonment Notice will be deemed withdrawn by the Marsch Trustee with prejudice.

3.    <u>Withdraw of Objection to Conversion Motion</u>.  Upon occurrence of the Effective Date, Lennar's opposition to the Conversion Motion will be deemed withdrawn with prejudice.

4.    <u>Withdrawal of Proofs of Claim</u>.  Upon the occurrence of the Effective Date, Lennar will be deemed to have withdrawn the Lennar Claims filed in the Marsch Bankruptcy Case.  Subject to occurrence of the Effective Date, Lennar shall receive no distribution from the Marsch Estate.

5.    <u>Releases</u>.  As of the Effective Date, the Parties give the following releases:

a.    <u>The March Trustee's Release of Lennar and Transfer of Claims to Lennar</u> The Marsch Trustee, for the Marsch Estate and any predecessors, successors and assigns, hereby waives any and all claims and rights against Lennar and hereby releases Lennar, and, as applicable, its predecessors-in-interest, successors, parents, subsidiaries, affiliates, partners, trustees, insurers, shareholders, members, directors, officers, employees, agents, attorneys, advisors, consultants, professionals, designees (including any professionals retained by such persons) and assigns, from any and all claims, demands, liens, actions,

suits, causes of action, obligations, controversies, debts, costs, attorneys' fees, expenses, damages, judgments, orders, and liabilities of whatever kind or nature in law, equity or otherwise, whether now known or unknown, suspected or unsuspected, and whether or not concealed or hidden, which have existed or may have existed, or which do exist or which hereafter can, shall or may exist, based on any facts, events or omissions occurring from the beginning of time to the Effective Date (collectively, the "Released Claims") and transfers any and all rights in the Released Claims to Lennar.

      b.    <u>Lennar's Release of the Marsch Trustee</u>.  Lennar, for itself and its successors and assigns, hereby waives any and all claims or rights against the Marsch Trustee, and releases the Marsch Trustee, and all professionals retained by the Marsch Trustee, jointly and severally, from any and all claims, demands, liens, actions, suits, causes of action, obligations, controversies, debts, costs, attorneys' fees, expenses, damages, judgments, orders, and liabilities of whatever kind or nature in law, equity or otherwise, whether now known or unknown, suspected or unsuspected, and whether or not concealed or hidden, which have existed or may have existed, or which do exist or which hereafter can, shall or may exist, based on any facts, events or omissions occurring from the beginning of time to the Effective Date.

      c.    In making the releases set forth in this Agreement, the Parties acknowledge that there is a possibility that, subsequent to the execution of this Agreement, they will discover facts or incur or suffer claims which were unknown or unsuspected at the time this Agreement was executed, and which if known by them at that time may have materially affected their decision to execute this Agreement.  The Parties have been advised of the existence of Section 1542 of the California Civil Code, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING**

**THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Notwithstanding the provisions of Section 1542, the Parties agree that the releases set forth in this Agreement shall constitute full releases in accordance with their terms. The Parties hereto knowingly and voluntarily waive the provisions of Section 1542, as well as any other federal or state statute, rule, or common law principle of similar effect, and acknowledge and agree that this waiver is an essential and material inducement to and consideration for each Party's execution of this Agreement. Notwithstanding the foregoing waiver, it is explicitly agreed and understood that the Parties are not releasing, acquitting, discharging or waiving any of their rights specifically provided for in this Agreement.

6.    <u>No Affect on Claims Against Nicolas Marsch III Personally</u>.  Nothing in this Agreement or the Approval Order shall restrict or impair the ability of any Party to pursue its claims against Marsch personally. For the avoidance of doubt, and without limitation: (a) Lennar is free to pursue its claims against Marsch personally, including the claims asserted in the Bridges Action, the Florida Action, the San Diego Superior Court cases entitled *Lennar Homes of California, Inc. v. DLA Piper US LLP, et al*., Case No. 37-2008-76811-CU-PN-CTL and *Lennar Homes of California, Inc., et al. v. DLA Piper US LLP, et al*., Case No. 37-2008-92842-CU-PN-CTL, and any action related to whether such claims are discharged, and (b) any Party is free to pursue any other person or entity not expressly released in this Agreement, including Patricia Marsch, any transferees of Marsch, Barry Minkow (or any of his affiliates) or Jeffrey Sachs; provided, however, that nothing herein shall be interpreted to constitute authority for any Party other than the Marsch Trustee to pursue causes of action that are property of the Marsch Estate. The Marsch Trustee hereby agrees not to oppose lifting the automatic stay (to the extent the stay is applicable) to allow Lennar to pursue such claims.

7.      The Briarwood Settlement Agreement.  The Marsch Trustee agrees not to seek, and will oppose, any effort to defer the hearing before the Bankruptcy Court on the Briarwood Settlement Agreement for any reason, including consideration of this Agreement.

8.      Availability of Counsel.  Each Party to this Agreement acknowledges that it has been advised by legal counsel of its, his or her choice regarding the meaning and consequences of this Agreement, including but not limited to the releases and the waiver of unknown and unsuspected claims set forth above.

9.      Representations, Acknowledgements and Declarations.   Each Party to this Agreement represents and acknowledges that, in executing this Agreement, it does not rely and has not relied on any representation or statement made by any other Party or any of their agents, advisors, representatives or attorneys, with regard to the subject matter, basis or effect of this Agreement or otherwise, other than as specifically stated in this Agreement.  The Parties further declare that, in making this Agreement, they rely entirely upon their own judgment, beliefs and interest and the advice of their counsel and that they have had a reasonable period of time to consider this Agreement and, if so desired, consult with counsel.

10.     Authority to Execute.  Each person who signs this Agreement represents and warrants that he or she has the authority and capacity to act on behalf of the Party for whom he or she is signing and to bind the Party to the terms of this Agreement (in the case of the Marsch Trustee, subject to Bankruptcy Court approval).

11.     Transfer of Interests.  Except as otherwise provided herein, each person who signs this Agreement represents and warrants that the Party on behalf of whom he or she is signing owns and has not assigned or otherwise transferred or purported to transfer, in whole or in part, any interest in any of the rights and claims that are the subject of this Agreement to any other person or entity.  The representations and warranties provided in this Agreement shall survive the Effective Date.

12.     No Admission of Liability.   The Parties acknowledge that this Agreement represents a compromise of disputed claims and that neither the payments provided for in this

Agreement nor anything contained in this Agreement shall be construed as an admission by any Party to this Agreement of any liability of any kind on behalf of such Party to this Agreement or any other Party to this Agreement.

13. <u>Successor and Assigns</u>.  This Agreement shall be binding upon the Parties and their successors in interest and assigns, including any successor trustee appointed in any chapter 7 case to which the Marsch Bankruptcy Case may be converted.

14. <u>Governing Law and Enforcement Provisions</u>.  This Agreement is to be governed by and construed in accordance with federal bankruptcy law, to the extent applicable, and where state law is implicated, the laws of the State of California shall govern.  By its execution and delivery of this Agreement, each of the Parties hereby irrevocably and unconditionally agrees for itself that any legal action, suit or proceeding against it with respect to any matter under or arising out of or in connection with this Agreement or for recognition or enforcement of any judgment rendered in any such action, suit or proceeding, may and shall be brought solely and exclusively before the Bankruptcy Court, or before such successor court as may gain jurisdiction over the Marsch Bankruptcy Case.

15. <u>Specific Performance</u>.  It is understood and agreed by each of the Parties that money damages would not be a sufficient remedy for any breach of this Agreement by any Party and each non-breaching Party hereto shall be entitled to specific performance and injunctive or other equitable relief as a remedy for any such breach.

16. <u>Supersedes Prior Agreements</u>.  This Agreement forms the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous written and oral agreements, discussions and representations (except as expressly set forth herein and with respect to any releases granted in any previous agreement). This Agreement may not be modified, amended or supplemented without the prior written consent of each of the Parties.  This Agreement shall be binding upon and inure to the benefit of the respective predecessors in interest, successors, trustees, shareholders, directors, officers, affiliates, employees, agents, attorneys, advisors, consultants, professionals, designees (including

any professionals retained by such persons) and assigns of the Parties hereto, to the extent permitted by law.  The terms of this Agreement are contractual and not mere recitals.

17.    <u>Interpretation</u>.  Whenever the context so requires in this Agreement, all words used in the singular shall be construed to have been used in the plural (and vice versa), each gender shall be construed to include any other genders, the words "includes", "including" and similar terms shall be construed as if followed by the words "without limitation", the words "hereof", "herein" and "hereunder" and other words of a similar import refer to this Settlement Agreement as a whole and not to the individual sections in which such terms are used, and the word "person" shall be construed to include a natural person, a corporation, a firm, a partnership, a joint venture, a trust, an estate or any other entity.

18.    <u>Drafting Ambiguities</u>.  The Parties agree that each Party and its counsel have reviewed this Agreement, and that each fully understands and voluntarily accepts all the provisions contained in this Agreement.  The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning and not strictly for or against any of the Parties.  The Parties further agree that this Agreement was the product of negotiations between the Parties and that any rule of construction that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Agreement or in any addenda, amendments or exhibits to this Agreement.

19.    <u>Agreement Not Severable</u>.  Subject to the occurrence of the Effective Date, each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.  Every provision of this Agreement is critical to the agreement of the Parties.  Should any provision of this Agreement be determined by any court of competent jurisdiction to be illegal, invalid or unenforceable, the Parties may elect (but are not required) to amend this Agreement to address and rectify such illegal, invalid or unenforceable provisions.

20.    <u>Headings</u>.  The headings of the paragraphs of this Agreement have been included only for convenience, and shall not be deemed in any manner to modify or limit any of the provisions of this Agreement, or be used in any manner in the interpretation of this Agreement.

21.    <u>Counterparts</u>.  This Agreement may be executed in counterparts and copies and/or facsimile or e-mail transmittal signature pages may be used instead of originals.  The executed counterparts shall be construed as and constitute one and the same instrument that will be binding on the Parties hereto.

22.    <u>Attorneys' Fees</u>.  Each Party shall bear its, his or her own attorneys' fees, court costs and related expenses incurred by or on behalf of said Party in connection with their underlying disputes and this Agreement.

[Remainder of page intentionally left blank]

AGREED AS OF THE DATE FIRST WRITTEN ABOVE:

James L. Kennedy, solely as the Chapter 11
Trustee for the bankruptcy estate of Nicolas
Marsch the III in U.S.B.C. Case No. 10-02939-
PB11

By:_____
   James L. Kennedy


LENNAR CORPORATION and its affiliates

By:_____
   Name:_____
   Title:_____


LENNAR HOMES OF CALIFORNIA, INC.
and its affiliates

By:_____
   Name:_____
   Title:_____

EXHIBIT "A"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

In re NICOLAS MARSCH, III
Case No. 10-02939-PB11

**CERTIFICATE OF SERVICE**

I, the undersigned, declare:  I am and was at the time of the service of the papers herein referred over the age of 18 years and not a party to the action; my business address is 401 B Street, Suite 1500, San Diego, California 92101.  I am a resident of or am employed in San Diego County.  I am readily familiar with the business practices of Pyle Sims Duncan and Stevenson for the collection and processing of correspondence for mailing with the United States Postal Service.  Correspondence is deposited with the United States Postal Service on the same day it is collected and processed in the ordinary course of business.

On June 30, 2011, a true and correct copy of the following document(s):

**CHAPTER 11 TRUSTEE'S MOTION TO APPROVE SETTLEMENT AND COMPROMISE WITH LENNAR CORPORATION AND LENNAR HOMES OF CALIFORNIA, INC.; MEMORANDUM AND POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**DECLARATION OF JAMES L. KENNEDY IN SUPPORT OF MOTION TO APPROVE SETTLEMENT AND COMPROMISE WITH LENNAR CORPORATION AND LENNAR HOMES OF CALIFORNIA, INC.**

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO APPROVE SETTLEMENT AND COMPROMISE WITH LENNAR CORPORATION AND LENNAR HOMES OF CALIFORNIA, INC.**

was served as follows:

(1)    **By U.S. Mail, First Class**, **postage prepaid,** to the interested parties listed below:

Steven E. Abelman
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO 80202-443

(2)    **BY THE COURT VIA NEF**:  Pursuant to controlling General Order(s) and in accordance with the Administrative Procedures and Guidelines for Electronic Filing, the foregoing document(s) will be served by the Court via Notice of Electronic Filing ("NEF") and hyperlink to the document.  On June 30, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and the persons listed on the attachment hereto are on the Electronic Mail List to receive NEF transmission at the email address listed.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on June 30, 2011, at San Diego, California.

      /s/ Bonnie Connolly
Bonnie Connolly

# Mailing Information for Case 10-02939-PB11

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive e-mail notices for this case.

- John B. Acierno    ecfcasb@piteduncan.com, jacierno@piteduncan.com
- Jess R. Bressi    jbressi@luce.com
- Christopher Celentino    ccelentino@duanemorris.com
- R. J. Coughlan    rcoughlan@csllaw.com, gwelter@csllaw.com
- Jonathan S. Dabbieri    dabbieri@sullivanhill.com, hill@sullivanhill.com;vidovich@sullivanhill.com;stein@sullivanhill.com;roberts@sullivanhill.com
- Jeffry A. Davis    jadavis@mintz.com, dsjohnson@mintz.com;jrdunn@mintz.com;aobrient@mintz.com
- Martin A. Eliopulos    elio@higgslaw.com, moklestadn@higgslaw.com
- Michael J. Gomez    mgomez@frandzel.com, efiling@frandzel.com,sking@frandzel.com
- L. Scott Keehn    scottk@keehnlaw.com, scottk@keehnlaw.com;joanb@keehnlaw.com;saraht@keehnlaw.com
- James L. Kennedy    jim@jlkennedy.com, jkennedy@ecf.epiqsystems.com
- Richard Kipperman    , ca82@ecfcbis.com
- Robert S. Lampl    Advocate45@aol.com, rlisarobinsonr@aol.com
- Ben H. Logan    blogan@omm.com
- Christopher M. McDermott    ecfcasb@piteduncan.com, cmcdermott@piteduncan.com
- Dawn Messick    dmessick@duanemorris.com
- Randall P. Mroczynski    rmroczynski@cookseylaw.com
- Michael T. O'Halloran    mto@debtsd.com, cs@debtsd.com;ac@debtsd.com
- David A. Ortiz    david.a.ortiz@usdoj.gov, USTP.REGION15@USDOJ.GOV;shannon.m.vencill@usdoj.gov;tiffany.l.carroll@usdoj.gov
- Frederick C. Phillips    fcp@philaw.com
- Joseph J. Rego    joerego@regolaw.com, rlewis@regolaw.com,lindsay@regolaw.com
- Kenneth N. Russak    krussak@frandzel.com, efiling@frandzel.com,ltokubo@frandzel.com
- Gerald N. Sims    jerrys@psdslaw.com, bonniec@psdslaw.com
- Susan C. Stevenson    sstevenson@psdslaw.com, bonniec@psdslaw.com
- United States Trustee    ustp.region15@usdoj.gov
- Richard S. Van Dyke    rsvandyke@vdalaw.com, djvandyke@vdalaw.com
- Alan Vanderhoff    alan.vanderhoff@vanderhofflaw.com, alanvanderhoff@cox.net
- Victor A. Vilaplana    vavilaplana@foley.com
- Les Zieve    bankruptcy@zievelaw.com