BEN H. LOGAN (S.B. # 071711)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

DANIEL M. PETROCELLI (S.B. # 97802)
DAVID MARROSO (S.B. # 211655)
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067
Telephone: (310) 246-6850
Facsimile: (310) 246-6679

Counsel for Lennar Corporation and
Lennar Homes of California, Inc.

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: <br><br> NICOLAS MARSCH III, <br><br> Debtor. | Case No. 10-02939-PB7 <br><br> Chapter 7 <br><br> **MOTION FOR AN ORDER DIRECTING VAN DYKE & ASSOCIATES, APLC, JOSEPH J. REGO, AND KEEHN & ASSOCIATES, APC TO COMPLY WITH BANKRUPTCY CODE § 329 AND BANKRUPTCY RULE 2016; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> <u>Hearing Date</u> <br> Date:   December 5, 2011 <br> Time:   11:00 A.M. <br> Judge:  Peter W. Bowie <br> Place:  Dept. 4, Room 328 <br>            Jacob Weinberger U.S. Courthouse <br>            325 West "F" Street <br>            San Diego, CA 92101 |

Lennar Corporation and Lennar Homes of California, Inc. (collectively, "Lennar") hereby file this motion for an order directing Van Dyke & Associates, APLC, Joseph J. Rego and Keehn & Associates, APC to comply with Bankruptcy Code § 329 and Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 2016 by disclosing the amount and source of their fees incurred in connection with their representation of Nicolas Marsch III ("Marsch"), the debtor in this case.

This Motion is based upon the attached Memorandum of Points and Authorities, all other pleadings and papers on file herein, any other evidence, either written or oral, this Court may allow at or before a hearing on this Motion, and any relevant matters of which the Court may take judicial notice.

DATED: October 14, 2011

          Respectfully submitted,
          O'MELVENY & MYERS LLP


          By: /s/Ben H. Logan
          Ben H. Logan
          Attorneys for Movants Lennar Corporation and
          Lennar Homes of California, Inc.

## MEMORANDUM OF POINTS AND AUTHORITIES

Lennar hereby moves for an order directing the attorneys who have appeared on behalf of Marsch, the debtor in the above-captioned case, to comply with Bankruptcy Code § 329 and Bankruptcy Rule 2016 by disclosing the amount and source of their compensation.

### I. SUMMARY

On February 25, 2010, Marsch filed a voluntary petition under Chapter 11 of the Bankruptcy Code, thereby initiating this case. On July 19, 2010, this Court ordered the appointment of a Chapter 11 trustee in this bankruptcy case and in the bankruptcy case of Briarwood Capital, LLC ("Briarwood") because, among other things, the Court had "great concern [about Marsch's] honesty with the Court as a debtor-in-possession in his own case, and as managing member of Briarwood Capital, LLC." [Docket No. 199]. As a result, the Court held that it had "lost confidence in Marsch's capacity for candor and honesty, and concludes that a trustee should be appointed in both the Marsch and Briarwood Chapter 11 cases, both for cause under § 1104(a)(1), and in the best interests of creditors and the estate under § 1104(a)(2)." *Id.* at 9.

On July 30, 2010, the United States Trustee selected James Kennedy to serve as the trustee for Marsch's bankruptcy estate and on August 4, 2010, the Court approved that appointment. [Docket Nos. 218 and 221]. Mr. Kennedy served as the Chapter 11 Trustee for the Marsch estate until September 29, 2011, when this Court granted Mr. Kennedy's motion to convert this case to Chapter 7. [Docket No. 455]. The next day, Mr. Kennedy was appointed the Chapter 7 Trustee for the Marsch estate. [Docket No. 457].

Since August 4, 2010, when Mr. Kennedy was appointed to serve as Chapter 11 trustee, three sets of attorneys have represented Marsch's individual interests before this Court -- Scott Keehn of Keehn & Associates, APC, Joseph Rego, and most recently Richard S. Van Dyke of Van Dyke & Associates, APLC. None of these attorneys has ever disclosed the amounts or the source(s) of their compensation, despite the fact that these disclosures are required by Bankruptcy Code § 329 and Bankruptcy Rule 2016.

1    Mr. Rego represented Marsch from July through October 2010 in connection with a motion for relief from the automatic stay filed by German American Capital Corporation ("German American"). On July 26, 2010, German American moved for relief from the stay to allow it, inter alia, to foreclose on the multi-million-dollar ocean-front home in La Jolla in which Marsch was living. [Docket No. 215]. On August 9, 2010, Mr. Rego filed an opposition to that motion on behalf of Marsch [Docket No. 228]. Thereafter, Mr. Rego engaged in discovery related to this motion, participated in an extensive hearing on September 23, 2011, and negotiated a consensual order, which after several iterations, was finally entered on October 22, 2010. [Docket No. 277].[1] Mr. Rego also filed an Adversary Proceeding on behalf of Marsch, *Marsch v. German American Capital Corp.*, Ad. Pro. No. 10-90403. [Docket No. 240]. Mr. Rego then filed a motion for a preliminary injunction in that adversary proceeding, which was resolved in connection with German American's motion for relief from the stay described above. [Docket Nos. 3, 9 in Ad. Pro. 10-90403].

Scott Keehn, of Keehn & Associates, APC, represented Marsch during August and September 2010 in connection with a motion he filed on August 2, 2010 seeking reconsideration of this Court's order directing the appointment of a Chapter 11 Trustee. [Docket No. 220]. Mr. Keehn briefed that motion and argued it at a hearing held on September 25, 2010. [Docket Nos. 259, 261].

Of these three counsel, Mr. Van Dyke has had the most extensive representation of Marsch and is Marsch's current counsel of record. Mr. Van Dyke has represented Marsch since at least January 21, 2011, when he filed a substitution of counsel with the Superior Court indicating that he was now representing Marsch in the DLA Cases[2] pending in San

---

[1] This order granting German American relief from the stay has been the subject of recent proceedings before this Court as Marsch has tried to evade it. See Docket Nos. 420, 421, 424, 425, 426, 434, 435, 438, and 439. To Lennar's knowledge, Marsch has yet to move out of this property notwithstanding that the order provided he would do so on February 1, 2011.

[2] *Lennar Homes of California, Inc. v. DLA Piper US LLP, et al.*, San Diego Superior Court Case No. 37-2008-00076811-CU-PN-CTL and *Lennar Homes of California, Inc., et*

2

Diego Superior Court that were settled against the other two defendants—DLA Piper USA, LLC and Brian Foster [Docket No. 361-1, ¶ 7]. Days later, on January 27, 2011, Mr. Van Dyke filed an amendment to the Schedule B on behalf of Marsch in this bankruptcy case [Docket No. 332]. Since that time, Mr. Van Dyke has been very actively involved in representing Marsch in all aspects of this bankruptcy case, and its related adversary proceedings,[3] and has filed numerous pleadings including objections to claims, oppositions to the key settlement motions and oppositions to motions for relief from stay.[4] Mr. Van Dyke is also currently representing Marsch in appeals of this Court's orders granting Lennar relief from the automatic stay to pursue Marsch in the Florida Action[5] and the DLA Cases and approving the settlement agreement between Lennar and Mr. Kennedy, as trustee in this bankruptcy case. [Docket Nos. 416, 436, and 467]. Mr. Van Dyke has also actively represented Marsch in the bankruptcy of Briarwood Capital, LLC [Case No. 10-02677] and the two Colony debtors [Case Nos. 10-02937 and 10-03361].

## II. ARGUMENT

The compensation arrangements with, and source of compensation of, "[a]ny attorney representing a debtor in a [bankruptcy] case ... or in connection with such a case, *whether or not such attorney applies for compensation under [the Bankruptcy Code]*, shall [be] filed with the Court...." 11 U.S.C. § 329 (emphasis added).[6] Bankruptcy Rule

---

al. v. DLA Piper US LLP, et al., San Diego Superior Court Case No. 37-2008-00092842-CU-PN-CTL

[3] For example, on February 16, 2011, Mr. Van Dyke sent Lennar's counsel an email in which he argued that the claims against Marsch in the Florida Action and DLA Cases should be tried in conjunction with the Bankruptcy Code § 523 non-dischargeability action. Mr. Van Dyke stated that he would be representing Marsch in that action. [Docket No. 361-1], ¶ 7, Ex. G.

[4] See, e.g., Docket Nos. 332, 336, 341, 367, 392, 416, 434, 436, 443, 447 and 467.

[5] *Lennar Corporation, et. al. v. Briarwood Capital, LLC, et al.*, Case No. 08-55740 CA40.

[6] Bankruptcy Code § 329 provides as follows:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, **whether or not such attorney applies for compensation under this title**, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was

3

1  2016 provides a 15-day window in which disclosures and supplemental disclosures must
2  be filed and requires disclosures of the particulars of any sharing or agreement to share.
3  Bankruptcy Rule 2016 ("*Every attorney* for a debtor, *whether or not the attorney applies*
4  *for compensation*, shall file ... the statement required by § 329 of the Code including
5  whether the attorney has shared or agreed to share the compensation with any other
6  entity.") (emphasis added).

7      Section 329 requires disclosure of prepetition compensation paid by a debtor
8  within one year of the bankruptcy petition and that is, perhaps, its most common
9  application. But the disclosures required by Bankruptcy Code § 329 and Bankruptcy Rule
10 2016 apply with equal force to payments made to counsel for a debtor during the entirety
11 of the bankruptcy case. 3 Collier on Bankruptcy § 329.03[1][c] (16th ed. 2011). *In re
12 C.W. Mining Co.*, 440 B.R. 878 (Bankr. D. Utah, 2010) (Bankruptcy Code § 329 and
13 Bankruptcy Rule 2016 require disclosure of fees and sources of fees during the entire
14 bankruptcy case, even during the "gap" period during which an involuntary petition is
15 being contested). As § 329 phrases it, this disclosure is required for services rendered "in
16 connection with the case." Bankruptcy Rule 2016 clearly requires an attorney for a debtor
17 to file statements disclosing the amount and source of all compensation received during a
18 bankruptcy case. Bankruptcy Rule 2016 requires counsel for a debtor to file within 14
19 days of the order for relief a statement listing the amount and source of all prepetition
20 payments received by the attorney, and to file within 15 days of receipt of any postpetition
21 payments a supplemental statement listing the amount and sources of all postpetition
22 payments.

23     This disclosure is essential when a debtor is not in possession since there is an
24 inherent risk that the debtor may be using property of the estate improperly to pay the

---

    made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of **or in connection with the case** by such attorney, and the source of such compensation.

11 U.S.C. § 329(a) (emphasis added).

4

debtor's personal counsel. 3 Collier on Bankruptcy ¶ 329.04[1][d] (16th ed. 2011). This disclosure is particularly relevant when the case is under Chapter 11 and involves an individual, for all property that an individual Chapter 11 debtor obtains during the pendency of the Chapter 11 case is property of the estate, whether that property is in the form of post-petition wages, gifts from third parties or any other source whatsoever. Bankruptcy Code § 1115. The temptation for an individual Chapter 11 debtor to ignore these requirements of the Bankruptcy Code is strong. Scrutiny is particularly warranted when the debtor has been removed from possession for dishonesty and failing to comply with the Bankruptcy Code and somehow is able to engage counsel to wage an aggressive litigation battle.

In any event, it is clear that Bankruptcy Code § 329 and Bankruptcy Rule 2016 require Messrs. Van Dyke, Rego and Keehn to disclose the amounts and sources of the fees they have received in connection with representing Marsch. None of them has made any effort to comply.

Failure to comply with Bankruptcy Code § 329 and Bankruptcy Rule 2016 can lead to a number of remedies, including sanctions, a prohibition on appearing in the case, and disgorgement of the fees paid. *See In re Park-Helen Corp.*, 63 F.3d 877, 880-881 (9th Cir. 1995), cert. denied, 516 U.S. 1049 (1996) (attorney's failure to disclose source of compensation is sanctionable, notwithstanding that (1) proper disclosure would have shown that no statute or rule was violated; (2) the failure resulted from negligence and inadvertence; or (3) the estate suffered no actual harm); *In re Whaley*, 282 B.R. 38, 41 (Bankr. C.D. Fla. 2002) (Because compliance is particularly necessary to the administration and disposition of Chapter 7 cases involving a voluminous number of relatively small individual cases, courts must trust attorneys to follow the rules. "Attorneys who breach that trust by failing to disclose compensation should suffer strict and quick consequences that could include the imposition of sanctions or the disgorgement of all fees paid in the case."); *In re Kisseberth*, 273 F.3d 714 (6th Cir. 2001) (court may order disgorgement of fees when the disclosure requirements are not met,

5

regardless of whether the fees are excessive); *In re Tri-State Plan Food Inc.*, 273 B.R. 250, 258 (Bankr. M.D. Ala. 2002) ("To put the matter plainly, when a debtor pays his lawyer, or other professionals, it should not be done in secret"); *In re Bell*, 212 B.R. 654 (Bankr. E.D. Cal. 1997) (stating that not even "ghost writing" obviates the need to comply with Bankruptcy Rule 2016—"[w]hether or not a debtor's counsel appears "of record" in a bankruptcy case, he or she must comply with Rule 2016(b) and Section 329(a)."). Obviously if the source of payments was estate property, the attorney must also disgorge this property, which neither the debtor nor the attorney should have ever taken. And even if the fees were paid from a source other than property of the estate, the attorney may be sanctioned for prior failures to comply and may be ordered to disgorge fees to the estate. 3 Collier on Bankruptcy § 329.04 [2] (16th ed. 2011).

### III. CONCLUSION

For the foregoing reasons, Lennar respectfully requests that Van Dyke & Associates, APLC, Joseph Rego and Keehn & Associates, APC, be directed to comply fully and completely with their obligations under Bankruptcy Code § 329 and Bankruptcy Rule 2016 by disclosing the amount and source(s) of any compensation received in connection with representing Marsch. After such disclosures are made, Lennar suggests that the Court and other parties consider the appropriate remedies for the past failures to comply and other appropriate remedies in light of the revelations provided by such disclosures.

DATED: October 14, 2011                          O'MELVENY & MYERS LLP

                                    By:    /s/ Ben. H. Logan
                                           Ben H. Logan
                                           Counsel to Lennar Corporation and
                                           Lennar Homes of California, Inc.